# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X    Index No. 07 CV 9700
KAT HOUSE PRODUCTIONS, LLC d/b/a SURF CHICK,
KATHLEEN MERRICK, PATRICIA J. WAGNER and
AURORA CONTRERAS,

                                     Plaintiffs,         **AMENDED VERIFIED**
                                                    **COMPLAINT**
     -against-

PAUL HASTINGS, JANOFSKY & WALKER, LLP,
REBECCA KELDER MYERS, KATHERINE CHANG
and CATHERINE M. CLAYTON,

                                   Defendants.
------------------------------------------------------------------X

        Plaintiffs, KAT HOUSE PRODUCTIONS, LLC d/b/a SURF CHICK, KATHLEEN MERRICK, PATRICIA J. WAGNER and AURORA CONTRERAS, by their attorneys, EGAN & GOLDEN, LLP, as and for their Complaint, allege as follows:

## INTRODUCTION

        1.     This action is brought by plaintiffs, KAT HOUSE PRODUCTIONS, LLC d/b/a SURF CHICK, and the three owners KATHLEEN MERRICK, PATRICIA J. WAGNER and AURORA CONTRERAS (collectively "plaintiffs") to recover against defendants for their acts of legal malpractice in their handling and application for trademarks on behalf of plaintiffs, and by reason of their malpractice, directly resulting in the dilution of their trademarks, the attendant loss of the profit, as well as proximately contributing to millions of dollars of losses to plaintiffs' business.

## PARTIES

        2.     Plaintiff, KAT HOUSE PRODUCTIONS, LLC, ("Kat House"), is a limited liability corporation organized and existing under the laws of the State of California with its principal place of business at 3637 Arundell Circle, Ventura, California 93003.

3. Plaintiff, KATHLEEN MERRICK ("Merrick"), is an individual who resides in the County of Los Angeles, State of California.

4. Plaintiff, PATRICIA J. WAGNER ("Wagner"), is an individual who resides in the County of Los Angeles, State of California.

5. Plaintiff, AURORA CONTRERAS ("Contreras"), is an individual who resides in the County of Los Angeles, State of California.

6. At all times herein, Merrick, Wagner and Contreras were and are the sole members and officers of Kat House.

7. Upon information and belief, defendants, PAUL HASTINGS, JANOFSKY & WALKER, LLP ("Paul Hastings"), is and was a foreign limited liability partnership registered to conduct business in the State of New York, and organized to practice law and existing under the laws of the State of California. Defendant maintains an office for the practice of law at 75 East 55th Street, New York, New York 10022.

8. Defendant, REBECCA KELDER MYERS ("Myers"), is an individual licensed to practice law in the State of New York. Upon information and belief, she maintains an office for the practice of law at Paul Hastings Janofsky Walker, LLP at 75 East 55th Street, New York, New York 10022.

9. Defendant, KATHERINE CHANG ("Chang"), is an individual licensed to practice law in the State of New York. Upon information and belief, she is a resident of the State of New York.

10. Defendant, CATHERINE M. CLAYTON ("Clayton"), is an individual licensed to practice law in the State of New York. Upon information and belief, she is a resident of the State of New York.

2

## JURISDICTION AND VENUE

11. Jurisdiction of this Court is invoked under 28 U.S.C. § 1331. Jurisdiction over plaintiffs' pendent state law claims exists pursuant to 28 U.S.C. §1367(a).

12. The amount in controversy well exceeds $150,000.000, excluding interest and costs.

13. Venue is properly laid within the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391(a), as plaintiffs' claims arose in the Southern District of New York and defendants maintain either residences or offices for the practice of law within said district.

## AS AND FOR A FIRST CAUSE OF ACTION

14. KAT HOUSE is in the business of selling clothing, surfboards and accessories that appeal to the female surf culture both domestically and world wide.

15. From 1996 to present, KAT HOUSE has been selling a variety of female surfing merchandise under the "Surf Chick" mark. Since 1996 and continuing until today, plaintiffs have invested a significant amount of time and money into designing, advertising and developing the Surf Chick mark.

16. Plaintiffs' efforts resulted in a well-developed reputation in the surfing community, and consumers in general, for high quality products from a single particular source which is KAT HOUSE.

17. In order to protect the well-developed mark, in or about March 1999, plaintiffs retained defendants to obtain the trademarks for "SURF CHICK", "SURF CHICK GOT WET" and "GOLF CHICK" among other marks pursuant to the applicable federal

3

requirements and procedures, including but not limited to the Lanham Act, 15 U.S.C., §1051, et seq., in both the United States and a variety of foreign countries.

18. Defendants accepted the legal work necessary to secure for plaintiffs the necessary domestic and international trademarks to protect plaintiffs' marks, and undertook the responsibility to perform such services on behalf of plaintiffs with reasonable skill, care and diligence.

19. Plaintiffs were inexperienced in trademark law and procedure and retained defendants as their attorneys to prepare the necessary applications for a trademark in accordance with applicable federal requirements and procedures, including but not limited to, the procedures set forth in the Lanham Act and to present and secure same with the United States Patent and Trademark Office. Defendants accepted the employment and responsibility to prepare the necessary trademark applications on behalf of plaintiffs and file same with the United States Patent and Trademark Office.

20. Plaintiffs also desired to secure the trademarks for the following foreign countries: United States, Canada, Australia, Japan, Mexico, Brazil, China, Taiwan, and the European Union.

21. Defendants retained on plaintiff's behalf the following foreign law firms (collectively "foreign law firms"), in the specified countries, to prosecute and secure the necessary applications and to secure a trademark in their respective countries:

| Law Firm | Country |
| --- | --- |
| Davies Collison Cave | Australia |
| Momsen Leonrados & Cia. | Brazil |
| Gowlings | Canada |

| | |
|---|---|
| Paul Hastings Janofsky & Walker | China / Japan |
| Kilburn & Strode | European Union |
| Yuasa & Hura | Japan |
| Uhthoff, Gomez, Vega & Uhthoff | Mexico |

22. At all times herein, defendants assumed the responsibility and obligation to supervise the work of the respective foreign law firms, and provided regular updates to plaintiffs on the status of their foreign applications.

23. Throughout their representation of plaintiffs, defendants purported to prepare the applications for such trademarks in their entirety in accordance with the applicable federal requirements and procedures, including but not limited to the Lanham Act, and in particular, purported to have properly prepared the trademarks for the protection of plaintiffs and securing the trademark protection.

24. Additionally, defendants purported to supervise the conduct of the foreign attorneys, and to ensure the foreign attorney's diligent and professional application for the trademarks on behalf of plaintiffs.

25. Defendants violated their professional duties and were guilty of acts of professional malpractice and failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession by, *inter alia*, the following acts:

a. Defendants repeatedly gave plaintiffs improper and incorrect advice on the applicable federal trademark protections, including but not limited to the Lanham Act and the procedures and requirements thereunder when applying for plaintiffs' trademark applications; and

  b. Defendants wrongfully and carelessly advised plaintiffs that certain trademarks which plaintiffs desired were available to them under federal law when such trademarks were not available; and

  c. Defendants would repeatedly advise plaintiffs certain trademarks were completed, when in fact the trademarks were actually never filed for and/or not completed in accordance with applicable federal trademark requirements and procedures; and

  d. Defendants carelessly prepared the papers on the applications for the trademarks as the subject applications failed to adhere to the requirements of the federal trademark regulations, including but limited to the Lanham Act, and in particular, defendants carelessly prepared the claims so that they did not cover all of the trademarks which plaintiffs could apply for on their behalf; and

  e. Defendants, through their wrongful and careless acts, repeatedly provided to plaintiffs contradictory and/or incorrect statements as to the status and progress of both the domestic application and the foreign law firms' applications; and

  f. Defendants, through their wrongful and careless acts, failed to ensure that the foreign law firms under their supervision would properly secure the necessary trademarks.

  26. Defendants' negligence and delay in failing to timely and properly complete the trademark applications pursuant to applicable federal law and allowed a competitor, Christian Dior, to infringe on the "Surf Chick" mark, and to flood the market with its imitation of plaintiffs' mark.

  27. Had defendants properly applied for, and diligently prosecuted, the trademark applications, Christian Dior would not have been able to mimic and copy plaintiffs' mark. By Christian Dior's, and other competitors, actions in mimicking and infringing on

plaintiffs' mark, plaintiffs were harmed in that the value and uniqueness of the mark was substantially diluted and damaged.

28. Upon information and belief, the following corporations also exploited defendants' failure to diligently pursue the necessary trademarks and infringed on plaintiffs' mark: George Corp. (an affiliate of Wal-Mart); Matlan Corp.; Flamer Corp.; and Mini-Wear.

29. But for defendants' negligent failure to properly complete and submit the requisite trademark applications, which was the proximate cause of plaintiff's damages, plaintiffs' mark for "SURF CHICK", "SURF CHICK GOT WET" AND "GOLF CHICK", among other marks, would have been protected under applicable federal trademark regulations, including but not limited to the Lanham Act, and would not have been infringed upon by Christian Dior, George Corp. (an affiliate of Wal-Mart); Matlan Corp.; Flamer Corp.; and Mini-Wear.

30. As a result of the negligent and careless acts of defendants in failing to properly complete and submit the trademark applications in accordance with federal trademark regulations, and the negligent and careless supervision of the foreign law firms, the trademarks which were ultimately secured on behalf of plaintiffs were neither timely, proper nor sufficient under the applicable federal trademark regulations, and did not protect plaintiffs as to all the claims which they could have made for the protection of their products and marks.

31. But for defendants' negligent failure to properly complete and submit the requisite trademark applications, which was the proximate cause of plaintiff's damages, plaintiffs' were not afforded protection under federal trademark regulations, including but not limited to the Lanham Act, and as a direct result, plaintiff could seek redress against Christian Dior, George Corp. (an affiliate of Wal-Mart); Matlan Corp.; Flamer Corp.; and Mini-Wear,

among others who infringed upon plaintiffs' mark for "SURF CHICK", "SURF CHICK GOT WET" AND "GOLF CHICK", among other marks

32. Defendants' negligence in failing to timely secure the domestic and international trademarks directly caused plaintiff to suffer damages and suffer the substantial diminution of plaintiffs' unique marks and severely compromised plaintiffs' worldwide ability to manufacture, sell and sub license the marks.

33. Defendants were negligent and failed to exercise the reasonable skill and knowledge commonly possessed by a member of the legal profession by repeatedly shifting and reassigning responsibility between a variety of attorneys within Paul Hastings, including among them, defendant Myers, Catherine M. Clayton and Katherine Chang.

34. Through the assignment and reassignment of plaintiffs' file within Paul Hastings, defendants were negligent and failed to exercise the reasonable skill and knowledge commonly possessed by a member of the legal profession in failing to adequately apprise the new attorneys of the status of plaintiffs' applications, provided contradictory information to plaintiffs regarding the status of the trademarks, double billed plaintiffs for previously completed work and mishandled plaintiffs' file.

35. As a direct, foreseeable and proximate result of the acts of malpractice, the individual defendant attorneys, Rebecca Kelder Myers, Catherine M. Clayton and Katherine Chang, all were acting within the reasonable scope of the business of defendant, Paul Hastings. Thus, defendant Paul Hastings is vicariously liable for the negligence of the above-named individual attorneys.

36. As a proximate and direct result of defendants' malpractice, other entities and competitors were thereby able to use and exploit plaintiffs' supposedly protected marks in

whole or in part without license, both in the United States and foreign countries, without paying plaintiffs for such use, which was reasonably worth and which plaintiffs could have obtained the sum of $30,000,000.00 had the application been properly prepared and the trademarks been obtained which fully protected the plaintiffs, all to the damage of plaintiffs in the sum of $30,000,000.00.

37. As a direct and proximate result of defendants' negligence and malpractice, plaintiffs' marks were not protected under federal trademark regulations, and plaintiffs could not seek legal redress under the federal regulations from the entities and competitors that infringed upon plaintiffs' marks.

38. By reason of the foregoing acts and omissions, defendants failed to exercise the reasonable skill and knowledge commonly possessed by a member of the legal profession.

39. As a direct, foreseeable and proximate result of defendants' negligence, carelessness, unskillfullness and lack of diligence, and failure to exercise the reasonable skill and knowledge commonly possessed by a member of the legal profession, plaintiffs have been damaged in an amount not yet fully ascertainable, but believed to be in excess of $30,000,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION

40. Plaintiffs repeat and reallege the foregoing paragraphs numbered "1" through "39" as if fully set forth at length herein.

41. Defendants contracted with plaintiffs as part of the agreement of retainer to timely and properly prepare all of the necessary papers and applications in accordance with

the procedures and requirements of applicable federal trademark law to diligently obtain the necessary trademarks that would fully protect plaintiffs' marks.

42. By failing to timely and properly prepare, file and prosecute the trademark applications, in failing to inform plaintiffs of the full scope that could or would be covered by the trademarks, and failing to procure for plaintiffs the proper trademarks, and in failing to following the procedures and requirements of the Lanham Act and applicable federal regulations, defendants breached their contract with plaintiffs.

43. As a direct, foreseeable and proximate result of defendants' negligence, carelessness, unskillfullness and lack of diligence, plaintiffs have been damaged in an amount not yet fully ascertainable, but believed to be in excess of $30,000,000.00.

## AS AND FOR A THIRD CAUSE OF ACTION

44. Plaintiffs repeat and reallege the foregoing paragraphs numbered "1" through "43" as if fully set forth at length herein.

45. As a direct and proximate result of the malpractice of defendants, plaintiffs were required to incur additional legal expense in retaining another law firm to complete their trademark applications.

46. Additionally, plaintiffs were obligated to employ another law firm to defend against the cancellation petition brought by Christian Dior.

47. Had defendants timely and properly secured the necessary trademarks on plaintiffs' behalf, and followed the procedures and requirements of the applicable federal statutes and regulations, plaintiffs' marks would have been fully protection and such a suit would have been unnecessary and avoided entirely.

48. As a result of plaintiffs retaining other attorneys, plaintiffs have incurred additional legal fees in the approximate amount of $275,000.00.

49. As a direct, foreseeable and proximate result of defendants' negligence, carelessness, unskillfulness and lack of diligence, plaintiffs have been damaged in an amount not yet fully ascertainable, but believed to be in excess of $275,000.00.

## AS AND FOR A FOURTH CAUSE OF ACTION

50. Plaintiffs repeat and reallege the foregoing paragraphs numbered "1" through "49" as if fully set forth at length herein.

51. As set forth in paragraph 18 above, defendants recommended the foreign law firms to apply for and secure the trademarks in their respective foreign countries.

52. Defendants had a duty to supervise the foreign law firms.

53. Defendants kept close contact and monitored the foreign law firms' progress on their respective trademark applications. All of defendants' efforts, and those of the foreign firms, was exercised from, supervised from, coordinated from and centralized out of, defendants' New York office.

54. Defendants breached their duty of supervision of the foreign law firms by negligently, carelessly, wrongfully and unskillfully supervising the foreign law firms and failing plaintiffs in their duty to exercise reasonable skill in supervising the activities and work of the foreign law firms.

55. As a direct, foreseeable and proximate result of defendants' negligence, carelessness, unskillfullness and lack of diligence, plaintiffs have been damaged in an amount not yet fully ascertainable, but believed to be in excess of $30,000,000.00.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs respectfully request that this Court enter judgment and grant the following relief:

    a.    On the FIRST CAUSE OF ACTION, that plaintiffs have judgment against defendants, jointly and severally, in the approximate amount of $30,000.000.00 plus interest, the precise amount to be determined at trial;

    b.    On the SECOND CAUSE OF ACTION, that plaintiffs be granted judgment against the defendants, jointly and severally, in the amount of $30,000,000.00 plus interest, the precise amount to be determined at trial;

    c.    On the THIRD CAUSE OF ACTION, that plaintiffs be granted judgment against the defendants, jointly and severally, in the amount of $275,000.00 plus interest, the precise amount to be determined at trial;

    d.    On the FOURTH CAUSE OF ACTION, that plaintiffs be granted judgment against the defendants, jointly and severally, in the amount of $30,000,000.00 plus interest, the precise amount to be determined at trial; and

    e.    That plaintiff be awarded costs and disbursements in this action and such other and further relief as to this Court seems just, proper, and equitable.

## JURY DEMAND

Plaintiffs respectfully demand a jury trial in this action.

Dated: Patchogue, New York
December 31, 2007

Yours, *etc.*,

**EGAN & GOLDEN, LLP**
*Attorneys for Plaintiffs*

By: _____
Brian T. Egan (BE1260)
475 East Main Street, Suite 114
Patchogue, New York 11772
631.447.8100

## VERIFICATION

STATE OF CALIFORNIA    )
                       ) ss.:
COUNTY OF LOS ANGELES )

PATRICIA J. WAGNER, being duly sworn, deposes and says:

I am the individual plaintiff in the within action. I have read the foregoing Complaint and know the contents thereof; and the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true. This verification is made by me because plaintiff is a corporation and I am an officer thereof. The sources of my information and grounds of my belief as to all matters not stated upon my own knowledge are: books, records and documents in the possession of the corporation and discussions with plaintiff's personnel with knowledge pertinent to the Complaint.

_____
PATRICIA J. WAGNER

Sworn to before me this
31th day of January, 2007.

_____
Notary Public